IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

PAULA BEALS, individually and on behalf of all others similarly situated, )
)
Plaintiff, )
)
vs. )  Cause No. 05 L 175
)
THE VARIABLE ANNUITY LIFE INSURANCE COMPANY )
)  CLASS ACTION COMPLAINT
)
Defendant. )

05-196-DRH

## COMPLAINT

Plaintiff Paula Beals, individually and on behalf of others similarly situated, states as follows for her Complaint against The Variable Annuity Life Insurance Company ("VALIC"):

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Paula Beals is a resident of Edwardsville, Illinois, in Madison County.

2. At all times relevant to this Complaint, Plaintiff owned a VALIC Tax Sheltered Annuity.

3. VALIC is a Texas corporation with its principal place of business in Houston, Texas.

4. VALIC is licensed to sell insurance products in Illinois, and at all times relevant to this Complaint, VALIC has promoted, marketed, and sold insurance and variable annuities to the investing public nationwide, including in Madison County, Illinois.

5. VALIC maintains investor relationships with clients in Madison County, Illinois, communicates regularly with them by mail and maintains an interactive website to communicate with clients, including clients in Madison County.

1

6. The transactions which are the subject of this Complaint occurred in part in Madison County, Illinois.

7. This Court therefore has jurisdiction over VALIC pursuant to 735 ILCS § 5/2-209, and venue is proper in this County pursuant to 735 ILCS § 5/2-101.

## VALIC'S VARIABLE ANNUITY FUNDS

8. Issuers of variable annuities like VALIC have marketed the advantages of long-term investment through variable annuities (such as professional management, diversification, insurance protection and tax deferral) over direct investment in securities.

9. A VALIC annuity, such as the VALIC Tax Sheltered Annuity, is a contract between an investor and VALIC, in which the investor agrees to make at least one minimum purchase payment to VALIC in return for a series of annuity payments at a later date.

10. The VALIC variable annuities which are the subject of this Complaint are those which consist of a "separate account" which keeps investors' assets separate from VALIC's assets, and each annuity's separate account is further divided into multiple Variable Investment Options. Each Variable Investment Option corresponds to a single mutual fund, and VALIC invests the assets of each Variable Investment Option in that Variable Investment Option's corresponding mutual fund. These mutual funds are maintained exclusively for variable annuity or variable life insurance products, although they often bear names very similar to those of retail mutual funds.

11. An investor may allocate her purchase payment and accumulated proceeds in the variable annuity among one or more of the various Variable Investment Options.

12. Different VALIC annuities permit investment in some of the same Variable Investment Options, meaning that owners of different annuities may nevertheless be invested in the same Variable Investment Options.

13. When an investor allocates any portion of a purchase payment or accumulated proceeds to a Variable Investment Option, VALIC credits the investor's contract with Accumulation Units.

14. Accumulation Units for VALIC's Variable Investment Options can be traded, either by purchase or redemption, only once a day at 4:00 p.m. Eastern Time.

15. Variable Investment Option Accumulation Units are sold at a price based upon the Variable Investment Option "Accumulation Unit Value" (AUV) plus applicable sales charges. Accumulation Units of the Variable Investment Options may be redeemed at the AUV less any redemption or surrender charges. The AUV is the value of a single Accumulation Unit in a Variable Investment Option.

16. The number of Accumulation Units an investor receives is determined when she allocates some or all of a purchase payment or accumulated proceeds to a Variable Investment Option. The number of Accumulation Units is determined by dividing the amount of the purchase payment or accumulated proceeds allocated to the Variable Investment Option by the AUV of one Accumulation Unit of that Variable Investment Option.

17. VALIC establishes a new daily AUV for each Variable Investment Option once every trading day at the close of trading on the New York Stock Exchange at 4:00 p.m. Eastern Time.

18. VALIC establishes the daily AUV for each Variable Investment Option by multiplying the last computed AUV by one plus the Investment Rate. The Investment Rate is the change in the value of the mutual fund's portfolio since the last computation divided by the amount of assets at the beginning of the period (less a separate account charge and taxes).

19. Because a Variable Investment Option's AUV is based upon the per share value of the underlying mutual fund, the value of an investor's Variable Investment Option

3

Accumulation Units is subject to change much the same way that the value of a mutual fund share changes each day. The value of an investor's Variable Investment Option Accumulation Units will fluctuate as the value of the corresponding mutual fund fluctuates.

20. The mutual funds in which VALIC invests Variable Investment Option assets are managed by fund managers with which VALIC contracts.

21. The fund managers handle the day-to-day tasks associated with managing an investment portfolio, such as investment management and valuation of the mutual fund's underlying portfolio of securities.

22. At the end of each trading day, the assets of the mutual fund are valued, and a "net asset value" is established for the mutual fund. That net asset value is the same net asset value VALIC uses to establish the corresponding Variable Investment Option's daily AUV.

### VALIC'S VARIABLE INVESTMENT OPTIONS' UNDERLYING PORTFOLIOS INCLUDE FOREIGN MUTUAL FUNDS

23. Some of the mutual funds in which the annuity Variable Investment Options are invested include in their portfolios securities which are traded in markets outside of the United States.

24. In valuing the assets of a mutual fund, the fund manager uses the last trade price in the home market of each of the securities in its portfolio. The home markets for such foreign securities include London, Paris, Frankfurt, Moscow, Singapore, Kuala Lumpur, Hong Kong, Taipei, Tokyo and Sydney. These markets are located in time zones that are five to fifteen hours ahead of Eastern Time.

25. Thus, a five to fifteen hour interval elapses between the close of the foreign securities markets and VALIC's calculation of its Variable Investment Option's AUV.

26. For example, the exchange located in Tokyo, Japan observes normal trading hours of 9:00 a.m. to 3:00 p.m. local time. Active trading of securities traded on this exchange ends,

and closing prices for those securities are posted, at 3:00 p.m. local time (2:00 a.m. Eastern time). When the mutual fund calculates the value of its portfolio securities using closing prices from this exchange and VALIC sets its Variable Investment Option AUV based upon those values, VALIC relies upon closing prices for securities traded on this exchange that have been static for 14 hours.

27. Studies of world financial markets have established associations between the value changes among various markets. There is a positive correlation between value movements in the U.S. markets and value movements in foreign markets. If the U.S. markets experience an upward movement in values, it can be predicted that Asian markets will move upward once trading begins the next day. The same upward movement can be predicted for European markets once trading begins the next day. Similarly, if the U.S. markets experience a downward movement in values, it can be predicted that Asian and European markets will move downward once trading begins the next day.

28. Studies also demonstrate that the greater the percentage increase or decrease in the value of U.S. markets, the more likely foreign markets will post corresponding value movements on the subsequent trading day. The probability that the value movements of foreign markets will follow the previous day's value movements in U.S. markets is directly correlated to the degree or extent of the value movement of U.S. markets.

## VALIC EXPOSES INVESTORS TO MARKET TIMING TRADING

29. A significant portion of the underlying securities in the mutual fund portfolios associated with the VALIC Variable Investment Options are listed on foreign exchanges and trade during each market's respective session. The share values set by these mutual funds and used by VALIC in setting its AUV do not take into account on a daily basis any price relevant information (such as value movements in the U.S. markets, changes in world equity market

indices, changes in the value of American Depository Receipts (ADRs), and fluctuations in foreign currency futures markets) that has become available in the interval between the close of the foreign markets and the calculation of the AUV. Such price relevant information impacts the valuation of the underlying securities in the mutual funds in which Variable Investment Option proceeds are invested and the subsequent calculation of the Variable Investment Options' AUVs. Such price relevant information is significant because the final market prices of the foreign securities often have become stale and no longer accurately reflect the true current market value of the securities.

30. By failing to make daily adjustments based upon the direction and degree of correlations between movements in U.S. and foreign markets, changes in world equity market indices, changes in the value of ADRs, and fluctuations in foreign currency futures markets, and by calculating Variable Investment Option AUVs based upon the corresponding mutual funds' net asset values which, in turn, are based upon the stale prices of foreign securities in the mutual funds' portfolios, VALIC has exposed long-term annuity owners to market timing traders who regularly purchase and redeem Accumulation Units of VALIC's Variable Investment Options as part of a profitable, stale-price trading strategy.

31. Market timing trading strategy is a short-term trading strategy which takes advantage of the stale pricing of the foreign securities upon which the Variable Investment Options' AUVs are based, enabling such traders to predict changes in the AUVs as a result of price relevant events that occur after the close of foreign securities markets and before VALIC calculates the Variable Investment Options' daily AUVs. Market timing traders are able to predict changes in Variable Investment Option AUVs because of the positive directional and degree of correlations between movements in U.S. and foreign markets, changes in world equity

market indices, changes in the value of ADRs, and fluctuations in foreign currency futures markets.

32. The stale price strategy of market timers who trade in Accumulation Units of VALIC's Variable Investment Options is to buy Accumulation Units on days when the U.S. markets move up and to redeem Accumulation Units when the U.S. markets move down. In order to derive maximum benefit from price relevant information developed subsequent to the now stale closing prices of the portfolio securities, market timers wait until the variable annuity's deadline for buying or redeeming Accumulation Units in VALIC's Variable Investment Options on any particular business day. Because VALIC cannot make an investment in the underlying mutual fund and the mutual fund cannot buy or sell the foreign securities in its underlying portfolio (due to the time difference between New York and the home markets of the foreign securities) at the time VALIC sets the daily AUV, the Accumulation Units that VALIC issues to and redeems from market timers do not reflect the actual value of the foreign securities held in the portfolio of the corresponding mutual fund.

33. Due to VALIC's use of mutual fund net asset values which are based upon stale prices of foreign securities, market timers who buy VALIC's Variable Investment Option Accumulation Units on days when the U.S. markets move up are buying discounted Accumulation Units and thereby dilute the ownership interests of other Variable Investment Option holders because the Variable Investment Options' underlying foreign securities assets are undervalued as of the time of the Accumulation Unit purchase.

34. Due to VALIC's use of mutual fund net asset values which are based upon stale prices of foreign securities, market timers who redeem VALIC's Accumulation Units on days when the U.S. markets move down are redeeming Accumulation Units at a premium and thereby dilute the ownership interests of other Variable Investment Option holders because the

underlying foreign securities assets are overvalued as of the time of the Accumulation Unit redemption.

35. The excess profits that market timing traders obtain take advantage of the stale pricing of VALIC's Variable Investment Options and dilute the ownership interests of other Variable Investment Option holders. When market timing traders buy Accumulation Units at stale, discounted prices, the ownership interests of other Variable Investment Option holders are diluted because the market timer has unfairly become, per Accumulation Unit, an equal Variable Investment Option owner with existing owners per Accumulation Unit. When market timing traders later redeem those Accumulation Units at a premium, the prior dilution of other Variable Investment Option holders' ownership interests is made permanent and, if the AUV is then artificially inflated as a result of VALIC's AUV calculation practices, may further dilute other Variable Investment Option holders' ownership interests. Long-term Variable Investment Option holders suffer a dilution in their ownership interests and the wealth represented by that diluted amount is transferred from them to market timing traders. Thus, the market timing trades capture an arbitrage profit that comes dollar-for-dollar out of the pockets of the investors.

## CLASS ACTION ALLEGATIONS

36. Through her ownership of the VALIC Tax Sheltered Annuity, Plaintiff at all times relevant to this Complaint held Accumulation Units in the Putnam Global Equities Variable Investment Option for the purpose of long-term investment.

37. Plaintiff brings this class action on behalf of herself and on behalf of a class of all persons in the United States who, through their ownership of an VALIC annuity or insurance products, held Accumulation Units of any VALIC Variable Investment Option invested in mutual funds which included foreign securities in their portfolios and which experienced market timing trading activity. Excluded from the Class are VALIC and any of its parent, subsidiary or

affiliated corporations, as well as any of their controlled persons, officers, directors, agents, servants or employees, and the immediate family members of any such person; any judge who may preside over this case; all persons who have claims in excess of $75,000; and any investor who engaged in market timing trading in the VALIC Variable Investment Options which are the subject of this Complaint.

38. Excluded from this Complaint are any claims based upon VALIC's conduct in connection with Plaintiff's or any class member's purchase or sale of any VALIC annuity product or Accumulation Units in any VALIC Variable Investment Option.

39. Plaintiff is a member of the Class and will fairly and adequately assert and protect the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of other class members.

40. Plaintiff has retained attorneys who are experienced in class action litigation.

41. Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. While Plaintiff cannot ascertain the exact number and identity of class members prior to discovery, on information and belief, there are thousands of class members and their identity can be ascertained from VALIC's books and records.

42. There are questions of law or fact common to the Class.

43. Those common questions predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

    a. whether VALIC negligently failed to evaluate on a daily basis price relevant information available after the close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, which was likely to change the value of the mutual fund securities and thus Variable Investment Option AUVs;

    b. whether VALIC negligently failed to implement valuation and pricing policies and procedures which account for price relevant events occurring after the

9

    close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, when calculating the AUV when closing prices of mutual fund portfolio securities did not reflect their true market values;

  c. whether VALIC negligently failed to protect its Variable Investment Option holders from market timing trading;

  d. whether VALIC breached its fiduciary obligations to Plaintiff and the Class by failing to evaluate on a daily basis price relevant information available after the close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, which was likely to change the value of the mutual fund securities and thus Variable Investment Option AUVs;

  e. whether VALIC breached its fiduciary obligations to Plaintiff and the Class by failing to implement valuation and pricing policies and procedures which account for price relevant events occurring after the close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, when calculating the AUV whenever closing prices of mutual fund portfolio securities did not reflect their true market values;

  f. whether VALIC breached its fiduciary obligations to Plaintiff and the Class by failing to implement valuation and pricing policies that use price relevant information to value mutual fund portfolio securities and Variable Investment Option AUVs whenever closing prices of the securities held by the mutual funds' portfolios did not reflect their true market values;

  g. whether VALIC breached its fiduciary obligations to Plaintiff and the Class by failing to protect VALIC Variable Investment Option holders from market timing trading;

  h. whether Plaintiff and the Class have sustained damages as a result of VALIC's conduct; and/or

  i. the proper measure of any such damages.

44. The prosecution of separate actions by individual members of the Class would create a risk of:

  a. inconsistent or varying adjudications with respect to individual members of the Class; and/or

  b. adjudication with the respect to individual members of the class, which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protest their interest.

45. The class action method is appropriate for the fair and efficient prosecution of this action.

46. Individual litigation of all claims, which might be brought by all class members, would produce a multiplicity of cases so that the judicial system would be congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising from the conduct of VALIC.

## COUNT I

47. Plaintiff repeats and incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48. VALIC directly or impliedly held itself out as a skilled specialist in the field of investment management, possessing the specialized knowledge, skill and care ordinarily used by reasonably well-qualified members of the investment management profession.

49. It thereby became VALIC's duty to exercise that degree of knowledge, skill and care ordinarily used, or which should be used, by reasonably well-qualified members of the investment management profession, including but not limited to the duties:

   a. to use mutual fund share values predicated upon accurate market values when valuing Variable Investment Options and setting their daily AUV's; and/or

   b. to prevent market timing trading in Variable Investment Options to prevent the dilution of the ownership interests of long-term investors.

50. VALIC knew or should have known that the closing prices for the foreign securities held in its Variable Investment Options' corresponding mutual funds' portfolios did not represent accurate market values of those foreign securities whenever price relevant events had occurred after the closing of foreign securities markets but before VALIC's calculation of daily AUVs.

51. VALIC was negligent in one or more of the following ways:

11

a. failing to evaluate on a daily basis price relevant information available to VALIC after the close of foreign securities markets in which the underlying mutual funds' portfolios of securities traded;

b. failing to adjust calculation of the daily AUV to take into account any changes in value of the foreign securities held in the underlying mutual funds' portfolios whenever price relevant events occurred after the closing of the foreign securities markets but before VALIC's calculation of daily AUVs;

c. failing to implement VALIC's valuation and Accumulation Unit pricing policies and procedures;

d. using valuation and Accumulation Unit pricing policies and procedures which benefited market timing traders of VALIC's Variable Investment Options at the expense of long-term Variable Investment Option holders; and/or

e. by favoring certain investors and permitting them to engage in market timing trading at the expense of other investors, namely Plaintiff and the Class.

52. As a direct and proximate result of VALIC's negligence, Plaintiff and the Class have suffered damages in the amount to be proven at trial, but less than $75,000 per Plaintiff or Class member, including all compensatory damages and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against THE VARIABLE ANNUITY LIFE INSURANCE COMPANY; ordering that this action be maintained as a class action pursuant to 735 ILCS § 5/2-801 and certifying an appropriate class; and awarding Plaintiff and the Class compensatory damages, attorney's fees, prejudgment interest, and costs of suit in an amount not to exceed $75,000 per plaintiff or class member. Plaintiff demands a trial by jury on all issues so triable.

## COUNT II

53. Plaintiff repeats and incorporates by reference paragraphs 1 through 46 and 48 through 49 as if fully set forth herein.

54. VALIC knew or was recklessly indifferent to the fact that the closing prices for the foreign securities held in its Variable Investment Options' corresponding mutual funds' portfolios did not represent accurate market values of those foreign securities whenever price

relevant events had occurred after the closing of foreign securities markets and before VALIC's calculation of the daily AUVs.

55. VALIC knowingly or with utter indifference to and conscious disregard for the rights of Plaintiff and the Class willfully and wantonly engaged in one or more of the following acts or omissions:

   a. failing to evaluate on a daily basis price relevant information available to VALIC after the close of foreign securities markets in which the underlying mutual funds' portfolios of securities traded;

   b. failing to adjust calculation of the daily AUV to take into account any changes in value of the foreign securities held in the underlying mutual funds' portfolios whenever price relevant events occurred after the closing of the foreign securities markets but before VALIC's calculation of daily AUVs;

   c. failing to implement VALIC's valuation and Accumulation Unit pricing policies and procedures;

   d. using valuation and Accumulation Unit pricing policies and procedures which benefited market timing traders of VALIC's Variable Investment Options at the expense of long-term Variable Investment Option holders; and/or

   e. by favoring certain investors and permitting them to engage in market timing trading at the expense of other investors, namely Plaintiff and the Class.

56. As a direct and proximate result of VALIC's foregoing conduct, Plaintiff and the Class have suffered damages in the amount to be proven at trial, but less than $75,000 per Plaintiff or Class member, including all compensatory damages and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against THE VARIABLE ANNUITY LIFE INSURANCE COMPANY; ordering that this action be maintained as a class action pursuant to 735 ILCS § 5/2-801 and certifying an appropriate class; and awarding Plaintiff and the Class compensatory and punitive damages, attorney's fees, prejudgment interest, and costs of suit in an amount not to exceed $75,000 per plaintiff or class member. Plaintiff demands a trial by jury on all issues so triable.

## COUNT III

57. Plaintiff repeats and incorporates by reference paragraphs 1 through 46 and 48 through 49 as if fully set forth herein.

58. A special relationship existed between VALIC and Plaintiff and the Class as a result of the following:

    a. VALIC is a stock corporation. The shareholders select the board of directors who will manage VALIC's assets, and the directors act as fiduciaries in managing Plaintiff's and Class' funds;

    b. VALIC assumed a position of trust and confidence by servicing and managing Plaintiff's and class members' investments in VALIC annuities;

    c. The calculation of the AUV was within the exclusive control of VALIC;

    d. Whether market timing was allowed to occur in the Variable Investment Options was within the exclusive control of VALIC;

    e. Because VALIC's variable annuities were contracts of adhesion prepared by VALIC and not subject to negotiation, unequal bargaining power existed between Plaintiff and class members and VALIC;

    f. VALIC and its agents held themselves out as highly-skilled insurance and financial experts, possessing the special knowledge and expertise needed to interpret and understand the complex and sophisticated daily management of annuity investments; and/or

    g. VALIC is an insurer characterized by elements of public interest which subject it to more stringent standards of conduct than those normally arising out of contract.

59. As a result of the foregoing, VALIC was a fiduciary to Plaintiff and Class members, and VALIC owed Plaintiff and the Class certain fiduciary duties.

60. VALIC breached its fiduciary duties to Plaintiff and the Class in one or more of the following ways:

    a. exposing Plaintiff's and the Class' ownership interests in the Variable Investment Options to dilution through market timing trading by failing to evaluate on a daily basis price relevant information available to VALIC after the close of foreign securities markets in which the underlying mutual funds' portfolios of securities traded;

  b. exposing Plaintiff's and the Class' ownership interests in the Variable Investment Options to dilution through market timing trading by failing to adjust calculation of the daily AUV to take into account any changes in value of the foreign securities held in the underlying mutual funds' portfolios whenever price relevant events occurred after the closing of the foreign securities markets but before VALIC's calculation of daily AUVs;

  c. exposing Plaintiff's and the Class' ownership interests in the Variable Investment Options to dilution through market timing trading by failing to implement VALIC's valuation and Accumulation Unit pricing policies and procedures;

  d. exposing Plaintiff's and the Class' ownership interests in the Variable Investment Options to dilution through market timing trading by using valuation and Accumulation Unit pricing policies and procedures which benefited market timing traders of VALIC's Variable Investment Options at the expense of long-term Variable Investment Option holders;

  e. by failing to provide complete and truthful information to Plaintiff and the Class regarding VALIC's allowance of market timing activities in VALIC Variable Investment Options;

  f. by failing to provide complete and truthful information to Plaintiff and the Class regarding the dilution of their holdings due to VALIC's failure to use accurate market values of foreign securities held in the underlying mutual funds' portfolios when setting daily AUV's; and/or

  g. by favoring certain investors and permitting them to engage in market timing trading at the expense of other investors, namely Plaintiff and the Class.

61. As a direct and proximate result of VALIC's breaches of fiduciary duties, Plaintiff and the Class have suffered damages in the amount to be proven at trial, but less than $75,000 per plaintiff or class member, including all compensatory damages and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against THE VARIABLE ANNUITY LIFE INSURANCE COMPANY; ordering that this action be maintained as a class action pursuant to 735 ILCS § 5/2-801 and certifying an appropriate class; and awarding Plaintiff and the Class compensatory and punitive damages, attorney's fees, prejudgment interest, and costs of suit in an amount not to exceed $75,000 per plaintiff or class

member. Plaintiff demands a trial by jury on all issues so triable.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

KOREIN TILLERY LLC

By: _____
STEPHEN M. TILLERY #2834995
10 Executive Woods Court
Swansea, Illinois 62226
Telephone: 618/277-1180
Facsimile: 314/241-3525

GEORGE A. ZELCS #3123738
Three First National Plaza
70 West Madison Street, Suite 660
Chicago, Illinois 60602
Telephone: 312/641-9750
Facsimile: 312/641-9751
E-mail: gzelcs@koreintillery.com

ANDREW S. FRIEDMAN
FRANCIS J. BALINT, Jr.
Bonnett, Fairbourn, Friedman & Balint, P.C.
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012
Telephone: 602/274-1100
Facsimile: 602/274-1199

*Attorneys for Plaintiff and the Class*